Isi Chito Lusa Yananta
207 South Linda Drive
Shelbyville, Tennessee 37160

PLAINTIFF

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT TENNESSEE

| | |
|---|---|
| Isi Chito Lusa Yananta<br>Akawenc Aka Wasteuh Meherrin Nation<br><br>Plaintiff<br><br>Vs.<br><br>STATE OF INDIANA<br>Indiana Department of Child Services<br>4150 N Keystone Avenue, Indianapolis, IN.<br>CITY OF INDIANAPOLIS<br>Indianapolis Metropolitan Police Department<br>address<br>**DEFENDANTS, ET AL** | CASE NO._____ |

## *VERIFIED COMPLAINT*

Comes now, Plaintiff, Isi Chito Lusa Yananta, enrolled tribal member and citizen Akawenc Aka Wasteuh Meherrin Nation, known publically as Hakeem Shabazz (Plaintiff), bringing claim for child neglect, malicious prosecution, official oppression, child endangerment, fraud, unlawful detention without a Warrant; the child was taken forcefully from Plaintiff; Plaintiff is the biological parent of the child in this matter and has always assisted in the cared for her.

Plaintiff at all times relevant has lived in Shelbyville, Tennessee and receives POST at 207 S. Linda, Shelbyville, Tennessee, Plaintiff at all times during this matter lived in Tennessee, and DEFENDANTS et al have at all times relevant to this matter, lived in the state of Indiana.

## *JURISDICTION*

Plaintiff bring this civil rights lawsuit pursuant to 42 U.S.C. §1983 to redress the deprivation by Defendants, at all times herein acting under color of state law, of rights secured to Plaintiffs under the United States Constitution, including the First, Fourth, and Fourteenth Amendments, and under federal law, including 42 U.S.C. §671(a)(16); jurisdiction is also pursuant to 28 U.S. Code § 1332 - Diversity of citizenship, amount in controversy, (a), (b) and (c);

Jurisdiction is conferred on this Court by 28 U.S.C. §1343(3) and 1343(4), which provide for original jurisdiction in this Court of all suits brought pursuant to 42 U.S.C. §1983. Jurisdiction is also conferred by 28 U.S.C. gr§1331(a) because claims for relief derive from the United States Constitution and the laws of the United States. Jurisdiction of this Court over any claim for Declaratory Relief is conferred by 28 U.S.C. §2201. This Court has supplemental jurisdiction over Plaintiffs' state law causes of action pursuant to 28 U.S.C. § 1367(a).

Venue properly lies in the United States District Court, Middle District of Tennessee for Article III claims, in that the events and circumstances herein alleged have been ignored by the state of Indiana and Plaintiff has been provided limited to no remedy or recourse.

## *Complaint*

Plaintiff has exhausted his remedies, or otherwise complied with state law requirements for the filing of appropriate notices of tort causes of action against Defendants pursuant to state law, and Plaintiffs' claims have been rejected.

## *II.*

## *PARTIES*

Isi Chito Lusa Yananta, non-resident inhabitant and enrolled tribal member of the Akawenc Meherrin tribe (herein) was at all times relevant to the facts and circumstances herein living in the county of Bedford located in the state of Tennessee.

Plaintiff, Isi Chito Lusa Yananta is the natural and biological parent of the minor child AW (Lil Yananta) (born December 7, 2015). Plaintiff' tribe has renamed A.W to Lil Yananta in these pleadings, and in order to protect the child's privacy, it is Plaintiff' intent to use this designation.

At all times relevant herein, prior to the barring of access of Plaintiff' child from Plaintiff' newly established protection cares by Defendants, Plaintiff provided economic support and constant video and phone contact, vigilantly watching over the child's care. From the moment 'Lil Yananta's mother, DOMINIQUE WILLIAMS (DW) informed Plaintiff, that she had given birth to a child (Lil Yananta) after their second sexual encounter.

At all times prior to the wrongful removal from Plaintiff' care and supervision and continued detention of Plaintiff' child by Defendants, Plaintiff enjoyed the company, companionship, and excitement of being awarded his child, an expectation of traveling from Tennessee, looking to experience all the benefits and burdens of his rights of familial association with his child.

Defendant STATE OF INDIANA ("STATE") is a municipality in corporate form, organized and existing under the laws of the State of Indiana, and has administrative subunits thereof the HUMAN SERVICES SYSTEM, and its related unit, the DEPARTMENT OF CHILD SERVICES (collectively referred to herein as the DCS").

DCS is a STATE governmental agency organized and existing pursuant to the law and policies of Defendant STATE, which together with STATE, promulgated, encouraged, and/or permitted, the policies, patterns, and practices under which the individual Defendants, committed the acts or omissions complained of herein, and of which policies, practices, customs, and/or procedures, and/or failure to train, whether or not promulgated in written form, encouraged, or allowed to persist by defendant STATE, STATE condoned, ratified, and ignored without remediation the conduct of the social worker defendants pursuant to said policies, practices, customs, and procedures, as complained of herein.

As the employer of social workers and their supervisors, STATE and/or DCS had primary responsibility for the training, education, and supervision of social workers, emergency response workers, dependency intake workers, placement workers, and all other DCS personnel, and DCS supervisors. Plaintiffs contend that the policies, practices and procedures of DCS aforesaid and herein below evidenced, inclusive of the warrantless removal of a minor child in cases where the

child is not in imminent risk of serious bodily injury, and then taking that child and placing that child in the custody of a know registered sex offender is extreme negligence and endangering to the child, which constitute a basis for governmental liability in this case pursuant to the *Monell* theory of liability, in that STATE has failed to train at all and/or failed to train employees adequately on state and federal law ICWA statutes implicated in the context of a child abuse/neglect investigation, and hereby seek to hold STATE responsible in whole or in part for the conduct of the individual Defendants herein named.

Defendant CITY OF INDIANAPOLIS ("CITY") is a municipality in corporate form, organized and existing under the laws of the State of Indiana, and has administrative subunits thereof , including the INDIANAPOLIS METROPOLITAN POLICE DEPARTMENT (herein "IMPD").

Plaintiff hereby sues all agencies and departmental units of CITY specified hereinabove under the designation of CITY herein, and/or interchangeably. Plaintiff hereby sues all agencies and departmental units of CITY specified hereinabove under the designation of CITY herein, and/or interchangeably.

Defendant KAMARY NUNN (herein "NUNN") whose acts as alleged herein were performed in her individual capacity or under color of state law, was at all times material hereto, upon Plaintiffs' information and belief, a case worker and/or emergency response worker, employed by STATE.

Defendant SHIRLEY PEREZ (herein "PEREZ"), whose acts as alleged herein were performed in her individual capacity or under color of state law, was at all times material hereto, upon Plaintiff' information and belief, a supervisor and/or case worker and/or emergency response worker, employed by STATE. Upon Plaintiffs' information and belief, PEREZ was at all relevant times herein NUNN s supervisor.

Plaintiff is informed and believe, and thereon allege, that the individually named Defendant social workers were decision makers in the making and/or implementation of STATE policy with regard to the removal and continued detention of Lil Yananta in the course of an investigation by an employee into allegations of child abuse and endangerment, and the de facto decision makers on the decision to remove the child such as Lil Yananta from her father without a warrant, without exigent circumstances, and without consent.

Plaintiff are informed and believe and, based upon such information and belief, allege that at all times herein mentioned, NUNN , and PEREZ were each the agent and/or employee of their co-defendant STATE, and each of them was acting within the scope, purpose and authority of and/or employment and with the knowledge, permission and consent of said co-defendants, and each of them, and/or within the scope and purpose of a conspiracy to violate Plaintiff' rights.

Defendant CITY OF INDIANAPOLIS (herein "CITY") is a municipality organized and operating under the laws of Indiana.

The INDIANAPOLIS METROPOLITAN POLICE DEPARTMENT (herein "IMPD") is a governmental agency organized and existing pursuant to the law and policies of Defendant CITY, which promulgated, encouraged, administered, and/or permitted, the policies, practices and procedures under which the individual Defendant employees committed the acts or omissions complained of herein, and either intentionally or negligently, whether as a result of policies, practices, or procedures, or as a result of ineffective, non-existent, or inadequate training and education of employees, caused or were otherwise responsible for the acts or omissions of said employees as complained of herein, and Plaintiff allege that the policies, practices, and/or procedures of the CITY, as determined and effected by the individual Defendants and other law enforcement officers of IMPD, constitute and/or engender a circumstance and/or environment of deliberate indifference to the rights and safety of inhabitants of the community.

Defendant officer FORD GOBLE badge # G5931 (herein "GOBLE ") whose acts as alleged herein were performed in his individual capacity or under color of state law, was at all time material hereto, upon Plaintiffs' information and belief ,was an employee of the CITY as an IMPD law enforcement officer.

Defendant sergeant M. MORGAN badge # 20260, (herein "MORGAN") whose acts as alleged herein were performed in his individual capacity or under color of state law, was at all time material hereto, upon Plaintiff' information and belief, an employee of the CITY and/or IMPD as a police officer.

Plaintiff is informed and believe, based upon such information and belief, allege that at all times herein mentioned, "MORGAN", and "GOBLE " were each the agent and/or employee of their

co-defendant CITY and/or IMPD, and each of them was acting within the scope, purpose and authority of and/or employment and with the knowledge, permission and consent of said codefendants, and each of them, and/or within the scope and purpose of a conspiracy to violate Plaintiff' rights. Plaintiff is ignorant of the true names and identities of those Defendants sued fictitiously herein inclusive.

Plaintiff is informed and believe that the individual Defendants named herein, including the Doe Defendants participated in some manner in the events set forth in this Complaint, or failed to participate in some manner, which acts or failures to act were in some manner a proximate cause of the injuries complained of by Plaintiff herein, and for which, whether by conspiracy to violate the Plaintiff' rights, agreement, inadequate supervision, inadequate training, consent, ratification, or active participation, such Doe Defendants are responsible and/or liable for the Plaintiffs' injuries and damages.

## III.
### FACTUAL ALLEGATIONS
### BACKGROUND

Plaintiff met DW while she was working at a Burger King. Plaintiff was traveling on Greyhound and had a quick layover in Indianapolis during the summer of 2014. Plaintiff reconnected with DW on social media and visited her twice. During the last visit DW got pregnant, and informed Plaintiff after baby was born.

After Lil Yananta was born Plaintiff was allowed to see her a total of about seven days because DW did not want to upset her boyfriend ANTONY GLEN WILLIAMS JR ("WILLIAMS"). Plaintiff did not know at the time that WILLIAMS was a registered "Sex Offender".

On or about SEPTEMBER 29 , 2017 the STATE through DCS contacted Plaintiff with a mailed correspondence. Plaintiff was informed that DCS had hired an investigator to look for Lil Yananta' father because the child was being neglected along with her other siblings by DW and the STATE was intervening in the matter.

.Plaintiff contacted DCS and scheduled to appear at the next court date. On October 3 , 2017 Plaintiff attended the hearing concerning custody of Plaintiff' child, and Plaintiff filed the

paperwork for gaining custody. DW was visibly irritated and surprised to see Plaintiff in court at child hearing, because she had tried to hide Plaintiff' whereabouts from DCS.

Plaintiff again attended another hearing a few days later and was told that his chances of custody was looking good and Plaintiff attended every subsequent court date until his child was released on April 13, 2018.

On or about December 6, 2017, Plaintiff drove to Indianapolis to visit Lil Yananta for her second birthday. Plaintiff arrived with toys for Lil Yananta and because it was close to Christmas, Plaintiff brought toys for the other children because DW had no money. Plaintiff was also concerned about the court taking the other children so Plaintiff gave DW money for utilities and helped her buy a vehicle to transport children and maybe find work.

Plaintiff knew that DW was pregnant again and that she was now married to WILLIAMS, but Plaintiff chose to help DW anyway.

While in Indianapolis for a two day visit with Lil Yananta on her birthday, Plaintiff went by DW's home to pick up Lil Yananta and DW. Plaintiff took DW and Lil Yananta to purchase a car seat and to purchase a vehicle for DW. Plaintiff and DW found and purchased a truck and drove back to DW's home to gather LIL Yananta's clothes for an overnight stay for her birthday.

When Plaintiff strapped Lil Yananta into her car seat, DW began saying, "You're not gonna bring my baby back" Plaintiff told her to stop the nonsense because will still have to go to court, but DW kept insisting and started trying to get into Plaintiff' car.

Plaintiff stood in the way and DW picked up a stone threatened to hit Plaintiff or Plaintiff' car. DW then went to other side of car and started to disconnect the baby's car seat. Plaintiff then reached into the car and pulled DW out of Plaintiff' car because Plaintiff believed DW might hurt the child because she became extremely angry for no apparent reason. DW again grab a stone from the ground and hit the car, Plaintiff quickly closed his car door and backed out of the driveway.

### *UNLAWFUL CHILD DETENTION*

On or about January 19 2018, Plaintiff was made aware that he had a "WARRANT"; Plaintiff was contacted by the Law Firm of KEFFER BARNHART, Attorney Barnhart strongly advised

Plaintiff to turn myself in and recommended that I go to WOODS BAIL BOND SERVICE. Plaintiff asked how did he get a Warrant and where the Warrant was located and no one had or provided a Warrant. Plaintiff was told by Barnhart, Woods Bonding and IMPD that they did not have the Warrant yet.

Plaintiff arrived in Indianapolis and went straight to the bonding company and paid a BOND for the pending arrest. After paying the BOND Plaintiff went with Bondsman to the IMPD jail where Plaintiff showed BOND papers and the Bondsman left. For the next nine hours Plaintiff was held in jail without presentment of charges or any official statement showing the claims against Plaintiff; even though Bond had been posted prior to the arrest; Plaintiff' rights were violated as in "TRESVANT V. CITY Of TAMPA". Arrest of Plaintiff was due to an incomplete investigation by IMPD employees of CITY.

### DAY AFTER REMOVAL

On January 23 , 2018 Plaintiff appeared in court for an alleged battery against DW, which allegedly took place during the birthday visit on December 6, 2018. Without thorough investigation the claims admitted by DW, IMPD gave incomplete testimony to secure the arrest of Plaintiff without investigating the allegations. GOBLE and MORGAN violated Due Process and did not follow the policy of evidence in child custody matters, and in the case of Indian Child Welfare Act, evidence must be provided before barring a parent from the child , which is a member of a tribe. Both Plaintiff and Lil Yananta are enrolled members of the Tali Baha Tribe and Akawenc Meherrin Nation.

Plaintiff was unlawfully detained from his child without proper investigation by IMPD nor by the DCS worker KAMARY NUNN , who attested under penalty of perjury that Lil Yananta was safe and the house Lil Yananta was living in was safe, but in reality WILLIAMS was a known registered sex predator. Plaintiff now had no way to check on the health and wellness of his child for the first time since he was brought into her life.

The failure of IMPD to conduct a complete investigation before requesting arrest, violated both Lil Yananta' rights to safe environment and Plaintiff' right to Due Process a Constitutional right, and DCS' placement and barring Plaintiff access to Lil Yananta while she was in an already known unsafe and harmful environment as declared by DCS, causes suffering of constant mental

anguish from not know if his child suffered during the illegal detention, as herein mentioned 1 – 260 above.

## *FURTHER DCS INVOLVEMENT*

On 10 / 24 / 2017 NUNN submitted information reflecting that all members of household where Lil Yananta was placed was safe and all parties check out ok. Plaintiff found later from another DCS worker named NNNNNNNN, that everybody did not check out and that DW' husband was a "Sexual Predator" and had been arrested for battery against DW.

Plaintiff recalls on the night of the alleged assault, WILLIAMS called Plaintiff accusing Plaintiff of sleeping with DW while he was visiting the baby, Lil Yananta. Plaintiff also heard DW crying in the background. Later WILLIAMS called again and swore that Plaintiff would not ever get custody after tonight.

In a proper juvenile dependency Petition DCS would have known these things and should have given un-speculative information to the court which aided in the detention and separation.

A proper Petition would contain many "facts" and "allegations" that were known to PEREZ and NUNN to be untrue or were made without any foundation. Further, PEREZ and NUNN misrepresented facts and failed to provide any of the contradictory or exculpatory information to the position that Plaintiff' child had either been abused or neglected, or were at substantial risk of being abused or neglected by Plaintiff, before detention or continued detention. Plaintiff has requested information, but has been denied.

Also, Plaintiff is informed and believe, that on the occasion where he was not made aware of ANTHONY WILLIAMS status, N.UNN, with the knowledge, consent, and/or ratification of PEREZ, instructed others not to notify Plaintiff that they had reason for concern about Lil Yananta, because they did a failed investigation in administering the juvenile dependency Petition" and they knew they were continuing to place child in potential peril.

## *IV.*

## *DAMAGES*

As a result of the conduct of DEFENDANTS, PLAINTIFFS suffered severe emotional distress, anxiety and general damage to their psyche, to such an extent as to cause physical manifestations

of pain and symptoms of nausea and severe depression, including but not limited to sleeplessness, headaches, fatigue, malaise, irritability, inability to focus, a generalized fear of authority figures and social workers, loss of appetite and loss of weight. PLAINTIFF also caused by the stress of the malicious court proceedings. The incident also caused humiliation and embarrassment and loss of reputation in the community to PLAINTIFFS, has caused the incursion of medical fees, therapy fees, and expenses related thereto, and is likely to cause the therapy, and/or counseling fees in the future as well as expenses related thereto.

PLAINTIFF is informed and believe, and thereupon allege, that he was placed on various state and local database registries for perpetrators of criminal assault further damaging their reputation and likely causing damages in the future in their rights of membership, society, community participation, and association.

PLAINTIFF seeks an award of exemplary (punitive) damages under federal law for malice, oppression and fraud, to make an example of and punish DEFENDANTS, and in the hope of deterring future conduct of a similar nature.

## V.
### CLAIMS FOR RELIEF
### FIRST CLAIM FOR RELIEF
### VIOLATION OF CIVIL RIGHTS (42 U.S.C. §1983)

[PLAINTIFFS against NUNN and PEREZ, and Warrantless Removal]

PLAINTIFF re-allege and incorporate paragraphs above, inclusive, as though fully set forth at this point, as they relate to a claim for relief for a violation of PLAINTIFF' rights under the 14th Amendment to the United States Constitution, against PEREZ and NUNN, and by virtue of the existence of policies, practices, customs and procedures, as well as inadequate training on the standards under federal and/or state law allowing for the warrantless removal / barring access to the child, the CITY and STATE, with regard to the violation of the PLAINTIFF' rights of familial association with his child by way of their warrantless removal / barring access.

PLAINTIFF re-allege the removal of his child was undertaken without consent, probable cause, a protective custody warrant, or exigent circumstances justifying removal of the minor children, and that the policies, practices, customs, procedures, or inadequate training of social workers

such as PEREZ AND NUNN, and by STATE, and officers GOBLE and MORGAN by CITY and/or IMPD were a contributing or driving force behind the action of removing the child needlessly and without a warrant from PLAINTIFF.

PLAINTIFF re-allege paragraphs 146 through 147 as said damages relate to a claim for relief for a violation of PLAINTIFF' civil rights for the warrantless removal of the minor children. The punitive damage allegations of paragraph 148 apply in this claim for relief to all individually-named Defendants.

**SECOND CLAIM FOR RELIEF**

**VIOLATION OF CIVIL RIGHTS (42 U.S.C. 1983)**

[PLAINTIFFS against PEREZ and NUNN – Continued Detention]

PLAINTIFFS re-allege and incorporates paragraphs mentioned above as inclusive, as though fully set forth at this point, as they relate to a claim for relief for a violation of PLAINTIFF' rights under the 14th Amendments to the United States Constitution, with regard to the violation of PLAINTIFFS' rights of familial association with their children, as separate and distinct from removal of the children, and consisting of the continued detention of the children pending a trial by the juvenile court on the issue of jurisdiction over the children, and against defendants NUNN and PEREZ, and by virtue of the existence of policies, practices, customs and procedures, as well as inadequate training on the standards under federal and/or state law allowing for the warrantless removal and continued detention of children, the STATE.

PLAINTIFF allege the removal of PLAINTIFF' children was undertaken without consent, probable cause, a protective custody warrant, or exigent circumstances justifying removal of the minor children and thereafter detained when there remained no court order, warrant, or exigent circumstances, which was without any cause or basis under federal law, and in direct contravention of ICAW, which called for return of the children, and that the policies, practices, customs, procedures, or inadequate training of social workers by STATE, were a driving force behind the action of removing and continuing the detention of her children needlessly and without a warrant.

PLAINTIFF allege that PLAINTIFF' children's continued detention, and/or their placement other than with PLAINTIFF, from the time of their removal and through the period of time until they are returned to PLAINTIFF, was and achieved by the presentation of false facts and the exclusion of exculpatory facts and information to the court; committing perjury, fabrication of evidence, failure to disclose known exculpatory evidence.

### *JUVENILE DEPENDENCY PETITION AND DETENTION REPORT*

Defendants PEREZ and NUNN did not at any time reasonably consider, implement, or attempt, any aspect of the "reasonable efforts" required by law and/or regulations regarding social work in the area of child protection after removal from a parent or guardian, and this conduct is also a result of the deliberate indifference to the rights and safety of parents and children evidenced by the failure to train, or failure to train adequately, those employees such as the employee defendants herein of STATE.

ICWA and Indiana laws but not limited to W&IC §305, 306, and 309, and Title 31 Regulations 31.25, 31.125.221, and 31.125.222, require that a social worker do a reasonable and diligent investigation and make reasonable efforts and consider reasonable alternatives to not remove and instead continue a child in the home of his/her parent(s) as the least damaging alternative to DCS intervention of any kind. No such reasonable efforts were made in this matter.

PLAINTIFFS re-allege paragraphs above as said damages relate to a claim for relief for a violation of PLAINTIFF' civil rights for the continued detention of PLAINTIFF' children in violation of PLAINTIFF' rights of familial association. The punitive damage allegations apply in this claim for relief to all individually-named Defendants.

### *NINTH CLAIM FOR RELIEF MALICIOUS PROSECUTION*

[PLAINTIFFS against NUNN and PEREZ]

PLAINTIFF re-alleges and incorporate paragraphs above inclusive, as though fully set forth at this point, as they relate to a claim for relief for malicious prosecution.

PLAINTIFFS allege that the prosecution of the juvenile dependency case against PLAINTIFF was conducted using the presentation of false facts and information and the exclusion of exculpatory evidence, all committed under the penalty of perjury and all committed with malice.

NUNN and PEREZ's conduct is also a result of the deliberate indifference to the rights and safety of parents and children evidenced by the failure to train, or failure to train adequately, those employees such as the employee defendants herein of STATE.

PLAINTIFF submit the allegations set forth all necessary elements for a claim for relief against said defendants for malicious prosecution.

PLAINTIFFS re-allege paragraphs above at this point as said damages relate to a claim for relief for malicious prosecution, as stated. The punitive damage allegations of paragraphs above apply in this claim for relief to all individually-named Defendants.

## *THIRD CLAIM FOR RELIEF*

[PLAINTIFFS against MORGAN, and GOBLE]

PLAINTIFFS re-allege and incorporate paragraphs as mentioned above, inclusive, as though fully set forth at this point, as they relate to a cause of action for a violation of PLAINTIFFS' civil rights under the Banes Civil Rights Act.

The acts of MORGAN and GOBLE that are alleged in this Complaint interfered or attempted to interfere with PLAINTIFF' exercise of her rights under the U.S. Constitution's 4th and 14th Amendment, and similar provisions of the Indiana Constitution, thereby entitling PLAINTIFF to the damages set forth in paragraphs above as said damages relate to a cause of action for a violation of their civil rights for the warrantless entry, warrantless removal of their children, in violation of PLAINTIFFS' rights.

The punitive damage allegations of paragraph above apply in this claim for relief to all individually-named Defendants in addition to a statutory civil penalty of $25,000.00 is hereby requested.

In doing the acts alleged in this Complaint, to all individually-named Defendants knew or should have known that their actions were likely to injure PLAINTIIF, and PLAINTIFF is informed and believe and thereon allege, that the individually-named Defendants intended to cause injury to PLAINTIFF and acted with a willful and conscious disregard of PLAINTIFF rights thus entitling PLAINTIFFS to recover punitive damages.

## *FOURTH CLAIM FOR RELIEF*

### *INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS*

[PLAINTIFF against All Individually-Named Defendants]

PLAINTIFF re-alleges and incorporate paragraphs above inclusive, as though fully set forth at this point, as they relate to a claim for relief for intentional infliction of emotional distress.

PLAINTIFF allege the facts and circumstances set forth hereinabove as related to the removal and continued detention of his child, and the Defendants' failures to disclose and/or intentional withholding of exculpatory evidence, failures to disclose and/or intentional withholding of evidence, elements for a claim for relief against defendants PEREZ and NUNN for intentional infliction of emotional distress, and that the actions of the named individual and Doe Defendants set forth hereinabove were intended to cause, or were engaged in with reckless disregard for the rights of PLAINTIFF and/or the likelihood of causing PLAINTIFF severe emotional distress PLAINTIFF, and did cause such distress and violate PLAINTIFF' rights.

PLAINTIFF re-alleges and incorporate paragraphs above inclusive, as though fully set forth at this point, as they relate to a claim for relief for intentional infliction of emotional distress. The punitive damage allegations in above paragraphs apply in this claim for relief to all individually-named Defendants.

### *FIFTH CLAIM FOR RELIEF MONELL RELATED CLAIMS*

[PLAINTIFFS against CITY and STATE]

PLAINTIFF re-alleges and incorporate paragraphs above inclusive, as though fully set forth at this point, as they relate to a claim for relief.

At all relevant times herein, Defendant STATE, including through its DCS, and Defendants City, including through its IMPD, established and/or followed policies, procedures, customs, and/or practices (hereinafter collectively referred to as "policy" or "policies") which policies were the cause of violation of PLAINTIFF' constitutional rights granted to them pursuant to 42 U.S.C. § 1983, as well as the case of *Monell v. New York Department of Social Services*, 436 U.S. 658 (1978), including those under the First, Fourth, and Fourteenth Amendments, including but not limited to:

- The policies, practices, and procedures of STATE and of CITY of detaining and/or removing children from their parents without exigent circumstances (imminent danger of serious bodily injury), court order and/or consent of their parents;

- The STATE policies, practices, and procedures of causing minor children to be dependents of the STATE, and as to CITY, fabricating and misrepresenting evidence, excluding and/or hiding exculpatory evidence from the court, all in an effort to cause the child to continue to be dependents of the court, removing the child's legal and physical custody from the parent beyond a reasonable period after the basis for any such removal is negated,

- The policies, practices and procedures of STATE and CITY of signing and presenting petitions in dependency actions under the penalty of perjury without personal knowledge of the truth and/or accuracy of the allegations contained therein;

- The policies, practices and procedures of STATE refusing to provide exculpatory and/or relevant and related evidence, testimony, reports, and information regarding the investigation of juvenile dependency matters, even when properly requested and demanded; and

- The policies, practices and procedures of CITY of arresting persons without due process of law, including, but not limited to, arrests without probable cause or an arrest warrant.

- By acting with deliberate indifference in implementing a policy, practice, or procedure of non-existent and/or inadequate training, and/or by failing to train their respective officers, agents and employees, in providing the Constitutional protections guaranteed to individuals, including those under the First, Fourth, and Fourteenth Amendments, when performing actions related to the investigation of child abuse and neglect, including dependency type proceedings.

Defendant STATE, as well as DCS as agencies or agents of the STATE, and Defendant CITY, as well as IMPD/ as agency or agent of the CITY, had duties to PLAINTIFFS at all times to establish, implement and follow policies, procedures, customs and/or practices which confirm and provide for the protections guaranteed

PLAINTIFFS under the United States Constitution, including the First, Fourth, and Fourteenth Amendments; to use reasonable care to select, supervise, train, control and review the activities of all agents, officers, and employees in their employ, including within DCS and/or IMPD; and further, to refrain from acting with deliberate indifference to the Constitutional rights of PLAINTIFF herein so as to not cause PLAINTIFF the injuries and damages alleged herein.

Defendants STATE and CITY breached their respective duties and obligations to PLAINTIFF, including, but not limited to, failing to establish, implement and follow the correct and proper Constitutional policies, procedures, customs, and practices, by failing to properly select, supervise, train, control, and review their respective agents and employees as to their compliance with Constitutional safeguards; and by permitting named Defendants, and other defendants whose identities are not yet known, to engage in the unlawful and unconstitutional conduct as herein alleged.

Defendant STATE and CITY knew, or should have known, that by breaching the aforesaid duties and obligations that it was foreseeable that it would, and did, cause PLAINTIFFS to be injured and damaged by the wrongful policies and acts as alleged herein and that such breaches occurred in contravention of public policy and as to their respective legal duties and obligations to PLAINTIFFS.

Defendant CITY and Defendant STATE also provided inadequate and/or non-existent training, including but not limited to, 1.) training on the Fourth and Fourteenth Amendments as same apply in the context of a child abuse investigation that may involve the removal of children from their parent(s), 2.) the existence and/or use of protective custody warrants provided for under Indiana law, 3.) the emotional trauma and psychological damage to a child from removal, 4.) the clearly established law of this federal circuit on the issues of warrantless removals, exigency, least intrusive means, and the proper investigation before removal of a child.

PLAINTIFFS re-allege the allegations of paragraphs above as said damages relate to a claim of relief for a violation of his civil rights as stated.

These actions, or inactions, of Defendants are the legal cause of injuries to PLAINTIFFS as alleged herein, and as a result thereto, PLAINTIFFS have sustained general and special damages, as well as incurring legal research fees, costs, and expenses, including those as authorized by 42 U.S.C. § 1983, to an extent and in an amount subject to proof at trial.

WHEREFORE, Plaintiff demands judgment against all DEFENDANTS for injunctive relief and actual, special, compensatory damages, attorneys' fees and costs of the litigation in an amount not less than six hundred and fifty thousand dollars ($650,000) deemed at time of trial to be just, fair, and appropriate.

PLAINTIFFS re-allege the allegations of paragraphs above as said damages relate to a claim of relief for a violation of his civil rights as stated.

These actions, or inactions, of Defendants are the legal cause of injuries to PLAINTIFFS as alleged herein, and as a result thereto, PLAINTIFFS have sustained general and special damages, as well as incurring legal research fees, costs, and expenses, including those as authorized by 42 U.S.C. § 1983, to an extent and in an amount subject to proof at trial.

WHEREFORE, Plaintiff demands judgment against all DEFENDANTS for injunctive relief and actual, special, compensatory damages, attorneys' fees and costs of the litigation in an amount not less than six hundred and fifty thousand dollars ($650,000) deemed at time of trial to be just, fair, and appropriate.

Isi Chito Lusa Yananta

Plaintiff

_____

STATE OF TENNESSEE }
COUNTY OF DAVIDSON}

VERIFICATION

I, Isi Chito Lusa Yananta verify that I have developed and submitted the allegations contained in the Verified Complaint, that I have personal knowledge of the facts, and that the facts stated in the Verified Complaint are true, except those facts alleged upon information and belief, as to those facts, believe they are true. Attesting before the state Notary representatives is required by the United States and is accepted with explicit rights reserved, due to lack of diversity applications available for indigenous people of America.

_____
Notary Public

My Commission Expires:            NOTARY SEAL

DEBBIE L. DREWER
STATE OF TENNESSEE
NOTARY PUBLIC
BEDFORD COUNTY




# TALI BAHA FALAHTUCHI OKHINA
# AKAWENC MEHERRIN TRIBE
### "Treaty of Camp Holmes, 1853 (7 Stat. 474)"
### TREATY OF 1729 (North Carolina)

## JUDICIAL NOTICE OF TRIBAL ENROLLEMENT

I am Tushkahumoc Xelup, Director General and Plenary representative for the National Association for the Advancement of Indigenous Peoples International (NAAIPi) and Chief Judicial Advocate and enrolled clan member of the AKAWENC MEHERRIN tribe. The tribe is a beneficiary of the Treaty of Camp Holmes, Treaty of 1729 North Carolina Statutes at large, PUBLIC LAW 93-638 and NAAIP Department of Commerce identity correction; file number15-0387, hereby issue this Constructive and Judicial Notice that Hakeem Shabazz listed in Superior Court Case #49G061801 - F5-000218, is tribally known as Isi Chito Lusa Yananta, *an enrolled clan member of the* Tali Baha Falatuchi Okhina, and an *enrolled tribal member of the Akawenc Meherrin* tribe; the Akawenc Meherrin is the sister tribe to federally recognized Meherrin Nation located in North Carolina. The Sachem Yodagent Uwa of the Akawenc Meherrin tribe is a direct lineal descendant beneficiary of Meherrin Nation people, chiefs and blood cousin of current Chief, 'Wayne Brown; with same rights bestowed under law.

Per the language of the Indian Health Manual, recognizing tribal rights and benefits, Section 2-1.2 PERSONS TO WHOM SERVICES MAY BE PROVIDED states:

A person may be regarded as within the scope of the Indian Health program if he is not-otherwise,

excluded therefrom by provision of law, and:

A) Is of Indian and/or Alaska Native descent as evidenced by one or more of the following factors:

1) Is regarded by the community in which he lives as an Indian OR Alaska Native;

2) Is a member, enrolled or otherwise, of an Indian or Alaska Native Tribe or Group under Federal supervision;

3) Resides on tax-exempt land or owns restricted property;

4) Actively participates in tribal affairs;

5) Any other reasonable factor indicative of Indian descent; or

B) Is an Indian of Canadian or Mexican origin, recognized by any Indian tribe or group as a member of an Indian community served by the Indian Health program; or

C) Is a non-Indian woman pregnant with an eligible Indian's child for the duration of her pregnancy through post partum (usually 6 weeks); or

D) Is a non-Indian member of an eligible Indian's household and the medical officer in charge determines that services are necessary to control a public health hazard or an acute infectious disease which constitutes a public health hazard.

Per Section 2-2.1 A-1,4 & 5 I, all members of the AKAWENC MEHERRIN tribe, are eligible for health services through the Indian Health Service Program as we are recognized by North Carolina, and surrounding state communities as Indians (1), participate in the tribal affairs of the AKAWENC MEHERRIN tribe (4) and can show direct relationship to members of the Federally Recognized "Meherrin Nation" Indian Tribe (5).

Isi Chito Yananta and his child are in fact enrolled, adopted and made part of the Akawenc Meherrin through treaty with the Tali Baha Falatuchi Okhina Clan, and are not subject to colorable law or state claims without actual evidence of an alleged offense. This is judicial notice, advising State of Indiana of the actual and factual protections provided to tribes under federal ATS, and tribal law, as provided by "Courts of Tribal Offenses", and UNDRIP.

In the abovementioned matter, the State of Indian and the court has elected to place burden upon itself in making a determination as to Indian status and rights of Hakeem Shabazz. The state has allowed and perpetuated a false arrest of Isis Yananta and has held his child from him in violation of tribal rights.

This attempt by the tribe is made as a means to acquire the "due process" provided by your courts in accordance with ICWA, federal law and international treaty law. We are not looking to prolong these issues and are willing to resolve these issues by simply providing information as may be required. As foreign national Americans, we understand our remedy to be found in the Article III jurisdiction, but are not looking to pursue such options at this time, therefore we are requesting that an immediate hearing be established to correct "ORDER" which is holding an enrolled member of the Akawenc Meherrin tribe; the "Order" lacks jurisdiction.

The Court is encouraged to review our understanding of Article III jurisdiction, as it is the intent of the tribe to exercise its rights under Article III to resolve instances of racial discrimination, continued deprivation of custodial rights provided to tribes and failure to follow federal law in relation to ICAW, causing international rights deprivations due to the perpetuation of environmental racism and paper genocide, which are violations under the Alien Tort Statute in Article III venue. These are violations which were all established under the failed Racial Integrity Act [repealed] created by the state of Virginia.

DEFINITIONS OF ARTICLE III JURISDICTION:

The Court is invited to go to UNITED STATES CODE and read first §91 and then examine every other district court to find one ordained and established under Article III in all the continental states of the United states. In "CHAPTER 5—UNITED STATES CODE, DISTRICT COURTS"; ending with the paragraph below: "HISTORICAL AND REVISION NOTES." If you were not aware of pages 42 and 43 of Title 28 U.S.C., or if you have trouble reading or printing out these pages, you can also access Title 28 U.S.C. by going to http://uscode.house.gov/title_28.htm.

The District Court for the United States of America, District of Columbia [Washington, D.C.] is the proper venue and the tribal court has examined the statute law that created every United States district court and has found only one instance where Congress appeared to ordain and establish an Article III United States district court in any state.

In 1959, the Congress created an Article III United States district court for Hawaii, but made no provision for Article III judges by specifically precluding the President from appointing them. The Code specifically provides for territorial judges for the Hawaiian Article III court. Title 28

U.S.C.—Judiciary and Judicial Procedure has been enacted into positive law so the Code shows the same kinds of courts as are found in the statutes. Chapter 5 of Title 28 U.S.C.—District Courts consists of Sections 81 through 144. The names of all 50 states of the Union will be found from Sections 81 to 131 and in addition in Section 88 will be found the District of Columbia and in Section 119 Puerto Rico.

The nature of the astounding revelations in this matter obviously requires this unique format where facts are presented in support of the proposition that a non ARTICLE III court existing in any state of the Union cannot exercise Article III judicial power. This kind of presentation invites a fact that proves this position. Example of a fact: Title 28 U.S.C. is territorial law; this fact will be supported by material found in the notes to §91. Those in federal litigation, or who are contemplating that exercise, should be aware that legal justice is available only from courts that have judicial power. Any litigant from this point, in any United States district court in any state of the Union is warned that these courts have no Article III, Section 2 judicial power, whatsoever.

The United States district courts of the several states are not judicial courts and the judges that sit in those courts are not Article III judges and these judges cannot adjudicate matters of ARTICLE III. These Judges of these courts are appointed for life terms, but obtain judicial powers only when appointed to judicial courts with Article III power. District courts and district court judges of the United States have been mistaken for Article III courts and judges since the Judiciary Act of 1789. The mistaken belief that a court has jurisdiction is sufficient to confer it when everyone is equally *mistaken; but that jurisdiction remains what it is and not what it is mistaken to be.*

Names are labels, and like book covers, do a notoriously bad job of identifying contents, and just as a book cannot be accurately judged by its cover, a federal trial court is not accurately described by the name of the state where it is located. The names of the federal trial courts in the several states are labels that are fully explained in the first sentence of the "Historical and Revision Notes" that are part of the law: "Sections 81—131 of this chapter show the territorial composition of districts and divisions by counties as of January 1, 1945." Since the conclusion of the Civil War, the States of the Union are the federal territory within the state and the state officers who have taken an oath to uphold the United States Constitution.

The subject matter of Chapter 5 of Title 28 U.S.C. is the territorial composition of districts and

divisions by counties as of January 1, 1945. Of the courts named in Sections 81—131, which can only be the areas subject to the exclusive jurisdiction of the United States—federal territory, these areas consist of places like the national parks, military bases, federal buildings and federal courthouses. Crimes that occur on or in these federal places are federal crimes, and the federal courts for the districts are the proper forum for trials of those crimes. Article III judicial power is not needed for those courts, and those courts are certainly without such power. There is no room for legalistic interpretations of Chapter 5.

The only legislation, since the first judiciary act on September 24, 1789, to create an Article III United States district court is found in §91 of Title 28 U.S.C. This section documents the change of a territorial court to an Article III court, without actually giving the court Article III judicial power. Nothing can be done to change the nature of these courts in the several states without the direct intervention of Congress by legislation.

A judge without judicial power can do nothing to change the jurisdiction of the court where he presides. Any litigant or Petitioner in any federal court proceeding, who attempts to have the United States district court consider the issues raised in action, should be aware that the American Law Institute's Restatement of Judgments, holds that such a litigant is bound by the court's ruling. A federal judge sitting in a trial court in any United States district court is without judicial power, while such an official can be a life-tenured bureaucrat, such an official cannot be expected to rule other than administratively. All United States District Territorial Courts are under "Color of Law".

No United States district court (legislative) in any state may lawfully exercise Article III court power. *The lawful jurisdiction of the federal district court (Article III) or courts is limited to those places where Congress has exclusive jurisdiction.* It is also clear that federal judges and federal courts have been used in the past by the federal government to create the appearance of an Article III tribunal, but the transferring of an Article III judge to a state territory, does not create an Article III court or jurisdiction. The federal courts within the several states, known as United States District Courts are federal and territorial, in that, these courts implement administrative law on territory exclusively under the jurisdiction of the United States of America *Corporate / legislative*, and not Congress *Constitutional*. ARTICLE III is the jurisdiction for claims brought by American Aborigine, the American Indian.

Article III judicial power imposes self-restraint on judges. Only judges appointed to Article III courts may exercise the judicial power of the United States found in Article III, Section 2. Judicial power imposes restraints on the judges that have it and that serves as some protection from judicial abuse, which includes refusing to accept and act upon this Judicial Notice; such actions by this court would be unlawful. All justices appointed to the Supreme Court of the United States are genuine Article III judges, and the Aborigine rights of AKAWENC MEHERRIN tribe are established under Article III jurisdiction, therefore the demand for proper jurisdiction must be met in an Article III Court or Tribal Court.

AKAWENC MEHERRIN tribe is aware of the systemic abuse of tribal rights by the various states, and the AKAWENC MEHERRIN tribe believes the court has made a rush to judgment and has allowed a clear violation violated DUE PROCESS, in holding Isi Yananta liable as an accused DEFENDANT, accountable for a botched false arrest and fraudulent taking of BOND MONEY when there was no existing "WARRANT" or actual charges, and was not yet established under the law. With this proper and timely issued "JUDICIAL NOTICE", the court is obligated to correct its position concerning the violations against Isi Chito Yananta, and correction should be made concerning the continued holding of BABY XXXXXX without delay.

Congress has provided that territorial Title 28 U.S.C. judges are appointed to the United States district court (legislative) for the district of Hawaii, and are to be appointed to an Article III court. *The district judges for the district of Hawaii are specifically to be appointed by the President pursuant to sections 133 and 134 of title 28, United States Code, as officers of the United States, but not as judges of an Article III court.* These two sections are also to be used in appointing any of seven judges of the Puerto Rico district should a vacancy occur there. It can be deduced that appointment pursuant to § 133 and 134 of Title 28, will always produce territorial judges.

The Hawaii judicial district established in § 91 of the Judicial Code of 1948 was a territorial court. The United States District Court of Hawaii is not a true United States court established under Article III of the Constitution to administer the judicial power of the United States, *Balzac v. Porto Rico, 258 U.S. 298, 312 (1922)*. In *Balzac*, Chief Justice William Howard Taft stated that United States District Court for *Arecibo*, Porto Rico, as Puerto Rico was known then, "created by virtue of the sovereign congressional faculty, granted under Article IV, § 3, of that instrument, of making all

needful rules and regulations respecting the territory belonging to the United States."

Puerto Rico is the Commonwealth of Puerto Rico and it has not been incorporated into the United States though its inhabitants are United States citizens. The inclusion of Puerto Rico in Chapter 5 as § 119 does not make the district court for Puerto Rico an Article III court, because Puerto Rico has not been incorporated into the Union. Puerto Rico fits comfortably among the names of the 50 states because the geographical areas are mini federal territories or federal enclaves.

Only Hawaii has an Article III district court, and that court cannot function as one, because no ARTICLE III judges are appointed to that court; no other state has an Article III court. The federal district courts of California fall squarely within the mold of the federal courts of the 49 states that have no Article III district courts where Indian claims should be addressed.

The use of the term, "district courts of the United States" refers to Article III courts. There are no more than two "district courts of the United States." There is no doubt that the district court for Hawaii is an Article III court—that's one. The § 88 court for the District of Columbia is another.

The Historical and Revision Notes to that section make it clear that the District of Columbia district court is a constitutional court established and ordained under Article III. The existence of at least two "district courts of the United States" permits the general usage of language that refers to the "district courts of the United States" as Article III courts.

Legal scholars assume without justification that the federal district courts are Article III courts. AKAWENC MEHERRIN tribe has discovered, and proven, that no responsible public federal officer has ever publically questioned these assumptions. In all the legal literature that AKAWENC MEHERRIN tribe examined, the status of the United States district courts as Article III was assumed despite all the contrary authoritative evidence.

The United States Supreme Court in two cases: Balzac v. Porto Rico, 258 U.S. 298 (1921) and Mookini v. United States, 303 U.S. 201 (1938) made it clear that a *"district court of the United States" described a court created under Article III* and a *"United States district court" described a territorial court*. The former identified a constitutional court of the United States exercising the judicial power of the United States and the latter merely identified a court for a district of the

government of the United States.

The United States district courts are territorial and without judicial power. This has been so since the Judiciary Act of 1789. As such, the United States District Court for the District of California lack the jurisdiction to properly address AKAWENC MEHERRIN tribe's claim and must provide an Article III Judge in an Article III venue with haste and in the absence, the court must dismiss. The proper venue for addressing AKAWENC MEHERRIN tribe's Law of Nations claims is in the *District Court of the United States of America, District of Columbia {Washington, D.C.}.* FEDERAL ICWA

Caveat

It is the tribes understanding that the Court cannot assume Personam nor Subject Matter jurisdiction without a proper party to the claim. The 5th Amendment of the Constitution required that all persons within the United States must be given due process of the law and equal protection of the law. "Your law also provides that once state and federal Jurisdiction has been challenged, it must be proven. " Main v. Thiboutot, 100 S. Ct. 2502 (1980), Jurisdiction can be challenged at any time. "and " Jurisdiction, once challenged cannot be assumed and must be decided. " Basso v. Utah Power & Light Co. 495 F 2nd 906, 910; " Once challenged, jurisdiction cannot be assumed, it must be proved to exist.

" Stuck v. Medical Examiners 94 Ca 2d 751. 211 P 2d 389; "There is no discretion to ignore that lack of jurisdiction. " Joyce v. Us, 474 F2d 215; The burden shifts to the court to prove jurisdiction. "Rosemond v. Lambert, 469 F2d 416; Where the court is without jurisdiction, it has no authority to do anything other than to dismiss the case."; Fontenot v. State, 932 S. W.2d 185 " Judicial action without jurisdiction is void. "-Id (1996); " Criminal law magistrates have no power of their own and are unable to enforce any ruling. " V.T.C.A., Government Code sec. 54.651 et seq., Davis v. State, 956 S. W. 2d 555 (1997) Basso v. UPL, 495 F.2d 906.

Under federal Law, which is applicable to all states, the U.S. Supreme Court stated that "if a court is without authority, its judgments and orders are regarded as nullities. They are not voidable, but simply void, and form no bar to a recovery sought, even prior to a reversal in opposition to them. They constitute no justification and all persons concerned in executing such judgments or


STATE OF INDIANA
IN MARION SUPERIOR COURT
JUVENILE DIVISION

| | |
|---|---|
| Hakeem Shabazz-El, Trustee, | ) Pro Per |
| | ) PRAY FOR CUSTODY OF CHILD PERSUANT |
| **Respondent,** | ) THE INDIAN WELFARE ACT , 25USC§1911 |
| | ) |
| | ) |
| | ) |
| Vs. | ) CAUSE NO.  49D09-1709-JC-003038 |
| | ) |
| | ) |
| | ) **JUDGE BURLESON** |
| **STATE OF INDIANA,** by and through | ) Fourteenth Amendment; Article VI/Universal |
| MARION COUNTY DEPARTMENT OF | ) Declaration of Human Rights & Rights of |
| CHILD SERVICES | ) Indigenous Peoples, The Foreign Sovereignty |
| a Indiana public body corporate, | ) Immunities Act 28 USC 1601, The International |
| | ) Covenant of Civil & Political Rights, and THE |
| **Plaintiff-in-error.** | ) INDIANA REPUBLIC CONSTITUTION |
| | ) |

Presented by: Hakeem Shabazz-EL, Trustee, Executor
In Pro Per, Sui Juris
2235 Sadler Ave.
Nashville Tn. U.S.A.
Real Land: Turtle Island
270-331-8771

_____ /

## PRAY FOR CUSTUDY OF NATIVE AMERICAN CHILD PURSUANT TO
## 25 USC §1911 AND NOTICE THAT Ariya Nyla Williams IS OF INDIAN DECENT

MY HONORS, COMES NOW, Noble Hakeem Shabazz-El, Autochthonous living

being, in Propria personam, herein 'Respondent', moving the court to award custody

of the Indigenous American child: Ariya Nyla Williams, to her Father, who is an

Indian with his fore Parents listed on the Dawes Roll and current tribal affiliation.

This action being brought is also giving Notice of the Autochthonous status of the

father Hakeem Shabazz-EL and child, invoking the Indian welfare act to secure transfer of custody to the Father and the his Tribe.

## REASON TO GRANT CUSTODY

1. The citizenship of Ariya Williams does not affect or impair by any manner, the right for Hakeem Shabazz-EL to gain custody pursuant to 8 USC **§1401(b);**

2. the State's agents have visited the domicile of Noble Hakeem Shabazz-El **and have determined that it would be a safe and secure place for the child in question.**

3. Pursuant to 25 USC § 1911(b)(c), the child Ariya Williams should be must be given to her father, whom has good standing with his Tribe: (b)TRANSFER OF PROCEEDINGS; DECLINATION BY TRIBAL COURT

4. In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child not domiciled or residing within the reservation of the Indian child's tribe, the court, shall transfer such proceeding to the jurisdiction of the tribe, absent objection by either parent, upon the petition of either parent or the Indian custodian or the Indian child's tribe: Provided, That such transfer shall be subject to declination by the tribal court of such tribe.

5. (c)STATE COURT PROCEEDINGS; INTERVENTION
In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child, the Indian custodian of the child and the Indian child's tribe shall have a right to intervene at any point in the proceeding.

## REMEDY AND CONCLUSION

Respondent moves to invoke the Indian Welfare Act and have it applied in this case. WHEREFORE: custody of His daughter be ruled in his favor and Ariya Williams ordered to be released to Respondent's, her father's custody.

## VERIFICATION

I 'Affirm' that all statements, facts, and information, presented in this Affidavit are correct and true; and are presented as Evidence 'for the record'. I, furthermore, state that the fore said Exhibits, Evidence, Information and Facts are placed in Evidence in this case, are being presented in good faith and Affirmed as truth, to the best of my knowledge and belief.

x _____ Hakeem M. Shabazz-EL©
Authorised Representative.
All Rights Reserved.

STATE OF INDIANA
MARION COUNTY, ss:

IN THE MARION SUPERIOR COURT
CRIMINAL DIVISION

Cause No: 49

STATE OF INDIANA        )
                              )

vs.                     )
                              )

HAKEEM MALIK SHABAZZ-EL Jr.
B/Male
DOB 11/20/1986

**INFORMATION**
**COUNT I**
**STRANGULATION**
**I.C. 35-42-2-9(b) and I.C. 35-42-2-9(c)**
**A LEVEL 5 FELONY**
**COUNT II**
**BATTERY RESULTING IN BODILY**
**INJURY TO A PREGNANT WOMAN**
**I.C. 35-42-2-1(c)(1) and I.C. 35-42-2-1(g)(3)**
**A LEVEL 5 FELONY**
**COUNT III**
**DOMESTIC BATTERY**
**I.C. 35-42-2-1.3(a)(1) and I.C. 35-42-2-1.3(b)(2)**
**A LEVEL 6 FELONY**
**COUNT IV**
**DOMESTIC BATTERY**
**I.C. 35-42-2-1.3(a)(1)**
**A CLASS A MISDEMEANOR**
**COUNT V**
**CRIMINAL MISCHIEF**
**I.C. 35-43-1-2(a)**
**A CLASS B MISDEMEANOR**

On this date, the undersigned came before the Prosecuting Attorney of the Nineteenth Judicial Circuit and, being duly sworn (or having affirmed), stated that in Marion County, Indiana

COUNT I

On or about December 6, 2017, HAKEEM SHABAZZ-EL Jr., knowing that Dominique Williams was pregnant did, in a rude, insolent or angry manner, knowingly or intentionally apply pressure to the throat or neck of Dominique Williams in a manner that impeded normal breathing or blood circulation of Dominique Williams;

COUNT II

On or about December 6, 2017, HAKEEM SHABAZZ-EL Jr., knowing that Dominique Williams was pregnant, did knowingly touch Dominique Williams, a pregnant woman, in a rude, insolent, or angry manner by pushing and/or throwing and/or headbutting her resulting in bodily injury, that is: pain and/or abrasion and/or cuts and HAKEEM SHABAZZ-EL Jr. knew that Dominique

Williams was pregnant;

COUNT III

On or about December 6, 2017, HAKEEM SHABAZZ-EL Jr., being at least eighteen (18) years of age, did knowingly touch Dominique Williams, a family or household member, in a rude, insolent, or angry manner by pushing and/or throwing and/or headbutting her and HAKEEM SHABAZZ-EL Jr. committed said offense in the presence of a child less than 16 years of age, knowing that the child was present and might be able to see or hear the offense;

COUNT IV

On or about December 6, 2017, HAKEEM SHABAZZ-EL Jr. did knowingly touch Dominique Williams, a family or household member, in a rude, insolent or angry manner by pushing and/or throwing and/or headbutting her;

COUNT V

On or about December 6, 2017, HAKEEM SHABAZZ-EL Jr. did, without the consent of Dominique Williams, recklessly, knowingly or intentionally damage or deface the property of Dominique Williams, to-wit: window;

all of which is contrary to statute and against the peace and dignity of the State of Indiana.

I swear or affirm under penalty of perjury as specified by I.C. 35-44.1-2-1 that the foregoing representations are true.

_____
Affiant

January 3, 2018
Date

**TERRY R. CURRY**
Marion County Prosecutor
19th Judicial Circuit

State's Witnesses:
OFF. F. GOBLE
DET. C. KING
OFF. J. MONTGOMERY
Dominique Williams

_____
Deputy Prosecuting Attorney

# AFFIDAVIT
## FOR PROBABLE CAUSE

**STATE OF INDIANA, COUNTY OF MARION, SS:**

Detective Charles King swears (affirms) that:

*On 12/08/17, Ms. Williams came into 555 King Av., to make a battery report by her baby's father. She told me that on 12/6/17, her daughters father came over knocking on the porch door and window. She let Mr. Shabaz-el into the porch. He demanded that she tell him where the guy is that she is pregnant by. He instantly got in her face demanding where the N....r was staying. He then grabbed her throat with his right hand and began to choke her. He then puts her in a head lock and pushed her against the wall and window. The window did break. He also head-butted her face with and busted her lip. To get him away from he, she told me that she would show him where he is staying. They got to the car and he grabbed her coat and threw her onto the ground. This caused abrasions to both knees. He then left the scene.*

*E.T. Montgomery came to the precinct and took pictures of Ms. Williams injuries. Ms. Williams does have pictures of her injuries from that night.*

*A purple Sheet is Attached.*

On December 14, 2017 Detective Charles King with the Indianapolis Metropolitan Police Department Domestic Violence Unit took an audio recorded statement over the phone from B/F Dominique Williams. Ms. Williams stated she was assaulted by the father of her child. She identified him as B/M Hakeem Shabazz. The two have a child in common. They dated for approximately one year. The relationship ended in March of 2015. The two never lived together.
On December 6, 2017 Mr. Shabazz came to her residence located in the 1200 block of Pershing Avenue. He had their daughter with him. Ms. Williams invited him into her residence. He immediately started asking were the male was that she was currently seeing and is pregnant by. Mr. Shabazz knew Ms. Williams was pregnant. He grabbed Ms. Williams with his right hand around her throat and pushed her against a window, breaking the window. This caused pain to her head and throat. She stated she could speak but made it difficult to breath. He then put Ms. Williams into a headlock and threw her into the corner of the room. He then head-butted Ms. Williams in the face four times and grabbed Ms. Williams head and started to slam her head against the wall approximately five times. Ms. Williams stated she was starting to lose consciousness. Ms. Williams told Mr. Shabazz she would take him to where the male was that she was currently seeing. The two went outside to his car. Ms. Williams attempted to get his daughter out of the car. He stated are you taking her from me. He grabbed Ms. Williams by her jacket and pulled her onto the ground. This caused abrasions and pain to her knees. Mr. Shabazz left the scene with their daughter. Ms. Williams did not feel that their daughter was in danger. Their daughter was identified as B/F A. W. age 2.
Mr. Shabazz was concerned that Ms. Williams would call the police. He dropped his daughter off at DCS for Ms. Williams to pick up. Mr. Shabazz lives in Tennessee.
All events occurred in Indianapolis, Marion County, State of Indiana.

I swear (affirm), under penalty of perjury as specified by IC 35-44.1-2-1, that the foregoing representations are true.

/s/Charles King

AFFIANT

DATED:   December 27, 2017

STATE OF INDIANA          )          IN THE MARION SUPERIOR CRIMINAL
                          ) SS:      COURT 6
COUNTY OF MARION          )


STATE OF INDIANA          )
                          )
                          )
v.                        )
                          )
HAKEEM MALIK SHABAZZ-EL    )          CAUSE NO. 49G06-1801-F5-000218
JR.

F I L E D

October 2, 2018
*Myla A. Eldridge*
CLERK OF THE COURT
MARION COUNTY
TG

## ORDER ON MOTION TO DISMISS

The Court having examined State's Motion to Dismiss said Motion is in the following words and figures, to-wit:

(H.I.)

The Court being duly advised, now sustains said motion.

**October 2, 2018**                        *Jeffrey L Marchal*  Mag.
_____                    _____
Date                                       Judge
                                           Marion Superior Criminal Court 6

STATE OF INDIANA )
) SS:
COUNTY OF MARION )

IN THE MARION SUPERIOR CRIMINAL COURT 6

STATE OF INDIANA )
)
v. )
)
HAKEEM MALIK SHABAZZ-EL JR. )

CAUSE NO. 49G06-1801-F5-000218

## **MOTION TO DISMISS**

The State of Indiana moves the Court:

To dismiss all counts in the above-captioned case: \_\_\_x\_\_\_\_

To dismiss the following counts in the above-captioned case: _____

Count 1: Strangulation a Level 5 Felony
Count 2: Battery Resulting in Bodily Injury to a Pregnant Woman a Level 5 Felony
Count 3: Domestic Battery a Level 6 Felony
Count 4: Domestic Battery a Class A Misdemeanor
Count 5: Criminal Mischief a Class B Misdemeanor

for the following reasons:

| Code | Reason | |
|------|--------|---|
| 01 | **Evidentiary Problems** | |
| 02 | Essential Police Witness Not Present | _____ |
| 03 | Essential Civilian Witness Not Present | _____ |
| 04 | Plea Agreement | |
| 05 | Diversion | |
| 06 | State Declines Prosecution | |
| 07 | Restitution Made to Victim | |
| 16 | Good Defense | |
| 31 | Unable to Locate Essential Witness | |
| 65 | Defendant Deceased | |
| 67 | Victim Recants | |
| — | Other: _____ | |

10/01/2018                          /s/ Linda A Major _____
Date                                Deputy Prosecuting Attorney

The Court having examined said Motion to Dismiss, and being duly advised, now sustains said motion.

_____                          _____
Date                                Judge
                                    Marion Superior Criminal Court 6

if found guilty.

VIOLATION OF THIS ORDER CONSTITUTES A VIOLATION OF IC 35-33-8-3.2, WHICH COULD RESULT IN REVOCATION OF BOND OR RELEASE ON PERSONAL RECOGNIZANCE. VIOLATION OF THIS ORDER ALSO CONSTITUTES A VIOLATION OF IC 35-46-15-1, AND MAY ALSO SUBJECT THE DEFENDANT TO FEDERAL PROSECUTION. THIS ORDER IS VALID IN ALL 50 STATES, THE DISTRICT OF COLUMBIA, TRIBAL LANDS, AND UNITED STATES TERRITORIES.

Dated: _____January 3, 2018_____

_____
**Judge**

## STATEMENT OF DEFENDANT

I have read the above Order and I understand it. I also understand that violation of this Order constitutes a violation of IC 35-33-8-3.2, punishable by a revocation of my bond or release on my personal recognizance. I further understand that violation of this Order may cause additional charges to be filed against me. A copy of this Order has been given to me this ___23RD___ day of ___JAN___, 20_18_.

X_Hakeem Shebozz-EC_
**Signature of Defendant**

Thursday
7:30 AM

**MARION COUNTY PROSECUTING ATTORNEY**

**TERRY R. CURRY,** PROSECUTOR
251 E. OHIO ST., SUITE 160
INDIANAPOLIS, INDIANA 46204
PHONE (317) 327-3522 • FAX (317) 327-3531

**TO:**      **ALL DETECTIVES**
**RE:**      **DISCLOSURE OF POTENTIALLY EXCULPATORY INFORMATION AND NOTICE TO CONSULATE OF ARRESTED FOREIGN NATIONAL**

As part of the court-ordered discovery process, deputy prosecutors are required to disclose ANY AND ALL evidence that MIGHT be construed as giving favorable treatment to a State's witness and/or a defendant in a criminal proceeding. [*This includes, but is not limited to such things as: agreements not to file charges; reductions in bond; sentence modifications; requests for witness relocation, etc. IF you are unsure whether or not something could be construed as "leniency" or "consideration," please let the screening deputy know about it, and the deputy will determine whether or not the information needs to be listed.*]

In addition, when an arrested person is a foreign national, law enforcement agencies are required to follow the procedures set forth in the Vienna Convention on Consular Relations (VCCR) to notify the defendant of his/her right to have his/her consulate notified of the arrest. Notice must be given to that consulate only if the defendant so requests, or if the country requires notice.

Under Indiana law, any information known to the police officer is imputed to the deputy prosecutor. To make sure the deputy prosecutor handling the case is fully informed, please complete, date, and sign the following:

**STATE OF INDIANA v.** Hakeem Shabazz      **CAUSE NO.** 49G16-1801-F5-000218

I \_\_\_\_ [am] / \_\_X\_\_ [am not] aware of any favorable treatment or consideration given to any State's witness or any defendant. [*If favorable treatment or consideration was given, please describe in detail, including the name of each witness and the consideration given to the witness.*]

_____

_____

_____

\_\_\_If the defendant is a foreign national, he/she\_\_\_\_\_ [has] / \_\_\_\_\_ [has not] been notified of his/her right to have the consulate of his/her country notified of the arrest. [*Please provide the name of the country of which the suspect is a citizen. If the defendant is in custody, please provide the name, address, and telephone number of the consulate that was notified.*]

_____

_____

_____

Detective Signature: /s/ Charles King      Date: 12/27/2017



# Indianapolis Metropolitan Police Dept
## Case Report

| LEA Case #: | Agency: | Case Status: | Assignment Status: | Next Update Date: |
|---|---|---|---|---|
| PD17138481 | IMPD Domestic Violence Unit | Pending Review | Review | 01/09/2018 |

**Comments:**

Domestic battery report taken by district officer. The case was assigned by Sgt. Marshall.

The case file was given to Prosecutor Elizabeth Filipow for review.

## Officers

| Name: | Agency: | Role: |
|---|---|---|
| King, Charles - Patrol Officer #20202 | IMPD Domestic Violence Unit | Lead Investigator |

## Incident People

### Suspect / Offender

PD17138481 Supp # 0

No Mugshot Available

| Name: | Race: | Sex: |
|---|---|---|
| Shabaz-el, Hakeem | Black or African | Male |

| Age At Occurence: | Date of Birth: | DL #: |
|---|---|---|
| 26 | 11/20/1991 | |

**Address:**

**Phone(s):**
Cellular:270-331-8770

### Victim

PD17138481 Supp # 0

No Mugshot Available

| Name: | Race: | Sex: |
|---|---|---|
| Williams, Dominique | Black or African | Female |

| Age At Occurence: | Date of Birth: | DL #: |
|---|---|---|
| 26 | ██████ | ██████ |

**Address:**
██████████

**Phone(s):**
Cellula ███████████

## Case Notes

| Activity Type: | Officer: | Date/Time: |
|---|---|---|
| Case Note | King, Charles #20202 | 12/12/2017 18:47 |

An attempt was made to contact the victim at the number listed in the report. A male answered the phone and advised it was a wrong number and did not know the victim.

| Activity Type: | Officer: | Date/Time: |
|---|---|---|
| Case Note | King, Charles #20202 | 12/12/2017 19:03 |

The following items were acquired:

CAD

No prior reports

Criminal history suspect / victim

BMV suspect / victim

Triple I suspect / victim

Purple sheet

| Activity Type: | Officer: | Date/Time: |
|---|---|---|
| Case Note | King, Charles #20202 | 12/13/2017 15:54 |

An officer was sent to the address listed for the incident in the report to make contact with the victim. The run was CAD .1787.

Officer D. Pervine (D251) was able to make contact with the victim. She advised him she will contact Detective King.

| Activity Type: | Officer: | Date/Time: |
|---|---|---|
| Victim Interview | King, Charles #20202 | 12/27/2017 13:44 |

On December 14, 2017 Detective Charles King with the Indianapolis Metropolitan Police Department Domestic Violence Unit took an audio

Case 3:18-cv-01259    Document 1    Filed 11/07/18    Page 36 of 41 PageID #: 36



# DV PURPLE SHEET
Indianapolis Metropolitan Police Dept

| Officer |
| --- |
| Ford Goble(Badge #: G5931) - IMPD Southwest District |
| **Agency** |
| IMPD Southwest District |
| **Date Created** |
| 12/08/2017 1742 Hrs |

| Occurrence Date/Time | Report Date/Time | Report Number |
| --- | --- | --- |
| 12/06/2017 1950 - Hrs | 12/08/2017 1643 Hrs | PD17138481 |

| Location | | County |
| --- | --- | --- |
| 1215 North PERSHING Avenue INDIANAPOLIS, IN | | Marion |

| Latitude / Longitude | Common Place Name |
| --- | --- |
| 39.784693 / -86.199669 | W 12TH ST & W 14TH ST |

## Victim
### Victim(#1)
### Victim

**Victim**

**Name:** Dominique Williams **Sex:** Female **Race:** Black or African American **DOB** ▮▮▮ **Age:** 26

**DL #** ▮▮▮ Indiana)

**Observations**

ABRASION(S), COMPLAINT OF PAIN

**Other**

**Victim under the influence of**

No signs of intoxication

## Suspect
### Suspect(#1)
### Suspect

**Suspect**

**Name:** Hakeem Shabaz-el **Sex:** Male **Race:** Black or African American **DOB:** 11/20/1991 **Age:** 26

**Observations**

**Other**

**Suspect under the influence of**

## Relationship between Victim and Suspect

**Relationship between Victim and Suspect**

CHILD IN COMMON

| Length of Relationship - Year(s) | Length of Relationship - Month(s) | Date Relationship Ended | Length of Cohabitation - Year(s) | Length of Cohabitation - Month(s) |
| --- | --- | --- | --- | --- |
| | | | | |

## Children
### Children(#1)
### Child

**Child**

**Name:** Ariya Williams **Sex:** Female **Race:** Black or African American **DOB:** ▮▮▮ **Age:** 2

**Observations**

**Other**

**Was Child present or injured during domestic violence?**

No

**Was child field interview completed?**

No

## Witness
### Lethality I

**Has (S) ever used / threatened to use a weapon against you?**

N

**Has (S) ever threatened to kill you or your children?**

N

Run on: 12/12/2017 1858 Hrs by: Charles King

| Victim Interview | King, Charles #20202 | 12/27/2017 13:44 |
|---|---|---|

recorded statement over the phone from B/F Dominique Williams. Ms. Williams stated she was assaulted by the father of her child. She identified him as B/M Hakeem Shabazz. The two have a child in common. They dated for approximately one year. The relationship ended in March of 2015. The two never lived together.

On December 6, 2017 Mr. Shabazz came to her residence located in the 1200 block of Pershing Avenue. He had their daughter with him. Ms. Williams invited him into her residence. He immediately started asking were the male was that she was currently seeing and is pregnant by. Mr. Shabazz knew Ms. Williams was pregnant. He grabbed Ms. Williams with his right hand around her throat and pushed her against a window, breaking the window. This caused pain to her head and throat. She stated she could speak but made it difficult to breath. He then put Ms. Williams into a headlock and threw her into the corner of the room. He then head-butted Ms. Williams in the face four times and grabbed Ms. Williams head and started to slam her head against the wall approximately five times. Ms. Williams stated she was starting to lose consciousness. Ms. Williams told Mr. Shabazz she would take him to where the male was that she was currently seeing. The two went outside to his car. Ms. Williams attempted to get his daughter out of the car. He stated are you taking her from me. He grabbed Ms. Williams by her jacket and pulled her onto the ground. This caused abrasions and pain to her knees. Mr. Shabazz left the scene with their daughter. Ms. Williams did not feel that their daughter was in danger. Their daughter was identified as B/F A. W. age 2. Mr. Shabazz was concerned that Ms. Williams would call the police. He dropped his daughter off at DCS for Ms. Williams to pick up. Mr. Shabazz lives in Tennessee.

| Activity Type: | Officer: | Date/Time: |
|---|---|---|
| Case Note | King, Charles #20202 | 12/27/2017 13:55 |

The Fusion Center was emailed in an attempt to get the suspect's correct information.

| Activity Type: | Officer: | Date/Time: |
|---|---|---|
| Case Review with Prosecutor | King, Charles #20202 | 12/27/2017 15:38 |

The case file was given to Prosecutor Elizabeth Filipow for review.

## Incidents

| Incident #: | Summary: |
|---|---|
| PD17138481 | 12/06/2017 - 1215, PERSHING, IN |

| Offenses: |
|---|
| 35-42-2-C - BATTERY- DOMESTIC |

Case 3:18-cv-01259   Document 1   Filed 11/07/18   Page 38 of 41 PageID #: 38

**DL #:**

Phone: 270-331-8770 - Cellular (Date of Info: 12/08/2017)

---

| Victim | Supp # 0 |
|---|---|

**Name:** WILLIAMS, DOMINIQUE  (Primary **Title:**
Name)

**Race:** Black or African American    **Sex:** F    **Age at Occurrence:** 26 Years Old

**DL #:** _____ ndiana)

**Address:** _____ (Date _____

**Phone:** _____ Cellular (Date of Info: 05/09/2016 _____

Physical Description: Hgt: 510    **Wgt:** 165    Date of Info: 02/24/2015

Hair: Brown

Eyes: Brown

**Injuries:** Apparent Minor Injury    *Daughter B/F Ariya Williams*

---

## Incident Narratives

Title: Original Narrative

Author: Ford Goble    Date / Time:    12/08/2017 18:56 Hrs    Supp #:    0

On 12/08/17, Ms. Williams came into 555 King Av., to make a battery report by her baby's father. She told me that on 12/6/17, her daughters father came over knocking on the porch door and window. She let Mr. Shabaz-el into the porch. He demanded that she tell him where the guy is that she is pregnant by. He instantly got in her face demanding where the N....r was staying. He then grabbed her throat with his right hand and began to choke her. He then puts her in a head lock and pushed her against the wall and window. The window did break. He also head butted her face with and busted her lip.

To get him away from her , she told me that she would show him where he is staying. They got to the car and he grabbed her coat and threw her onto the ground. This caused abrasions to both knees. He then left the scene.

E.T. Montgomery came to the precinct and took pictures of Ms. Williams injuries. Ms. Williams does have pictures of her

---

Report Run On: SUNDAY DECEMBER 10, 2017 07:31:26 AM    By: DM    Page 2 of 3

Case 3:18-cv-01259    Document 1    Filed 11/07/18    Page 39 of 41 PageID #: 39

 **KING**

**Indianapolis Metropolitan Police Department**

Incident Report
551 N. King Ave., Indianapolis, IN 46222
Phone: (317) 327 - 6400


Southwest District

| ORI | County | Venue | Report # |
|---|---|---|---|
| INIPD0000 | Marion | INDIANAPOLIS | PD17138481 |

| Report Date / Time | Occurrence Date / Time | File Class |
|---|---|---|
| 12/08/2017 16:43 Hrs (US/Eastern) | 12/06/2017 19:50 Hrs (US/Eastern) | 35-42-2-C |

**Supplements:** Approved Report (1)

**Summary:** The father of her child came over to her house and battered her.

**Make this report attention to:**

STRANG
Preg?

| | |
|---|---|
| **Gang Related:** | No |
| **Domestic Related:** | Yes |
| **Firearm Involved:** | No |
| **Narcotics Involved:** | No |
| **Precious Metals Involved:** | No |
| **L.E.P. (Limited English Proficiency) Resource Used:** | LEP Resources Not Needed |
| **L.E.P. Language Used:** | Not Applicable/None |

## Incident Location

| | | | |
|---|---|---|---|
| **Address:** | 1215 North Pershing Avenue | | |
| **City:** | Indianapolis | **County:** Marion | **State:** Indiana |
| **ZIP:** | | **Country:** United States of America | |
| **Township of Occurrence:** | | | |

| | | | |
|---|---|---|---|
| **Beat:** | SW | **Latitude:** 39.784693 | **Longitude:** -86.199669 |
| **Sub-Beat:** | 10 | | |
| **Comments:** | W 12TH ST & W 14TH ST | | |

## Incident Offenses

| Supp # | Offense | Status | Status Date |
|---|---|---|---|
| 0 | 35-42-2-C - Battery- Domestic | Open | 12/06/2017 19:50 Hrs |

**Attempted / Completed:** Completed

**Weapons Used:** Personal Weapons (Hands, Feet, Etc)

## Officers Involved

| Role | Name | Agency | Supp # |
|---|---|---|---|
| Assisting | PATROL OFFICER J. Montgomery (#31726) | IMPD Southwest District | 0 |
| Reporting | PATROL OFFICER F. Goble (#G5931) | IMPD Southwest District | 0 |

## Incident People

**Suspect / Offender**      **Supp #** 0    2135 Sadler Ave

**Name:** SHABAZ-EL, HAKEEM (Primary Name)    **Title:**    **Date of Birth:** 11/20/1991   Nashville TN 37210

**Race:** Black or African American    **Sex:** M    **Age at Occurrence:** 26 Years Old    5'7" 200

Case 3:18-cv-01259     Document 1     Filed 11/07/18     Page 40 of 41 PageID #: 40

# Indiana Criminal Crossmatch

WARNING!!! THIS INFORMATION IS ONLY FOR OFFICIAL DUTIES OF THE PROSECUTOR'S OFFICE. THE INDIANA PROSECUTING ATTORNEYS COUNCIL AND BCFORWARD, DO NOT CERTIFY THE ACCURACY OF THIS INFORMATION. THE COMPLETENESS AND ACCURACY OF THIS INFORMATION IS DEPENDENT UPON THE INFORMATION ENTERED BY THE ORIGINATING PROSECUTOR'S OFFICE. VERIFICATION OF THE INFORMATION SHOULD BE SOUGHT FROM THE ORIGINATING COUNTY.

## Possible Match in Marion County

| Juris | Offender | Name | Address | Social Security # | Date of Birth |
|---|---|---|---|---|---|
| 49 | 741887* | HAKEEM MALIK SHABAZZ-EL, JR | 207 S. Linda Drive Shelbyville, TN 37160 | 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** | 11/20/1986 |

| Race | Sex | Hair | Eyes | Height | Weight | License State/# | State ID | FBI |
|---|---|---|---|---|---|---|---|---|
| B | M | BLK | BRO | 510 | 215 | TN/110889101** | | |

49G06-1801-F5-000218                          Filed Date: 01/03/2018

OACN/Police Report #: dp170138481

*Count: 1 - Strangulation*
    *5 - Felony*
    *35-42-2-9(b)*
    *Penalty: 35-42-2-9(c)*

Disposition: Pending
Offense Date: 12/06/2017

*Count: 2 - Battery Resulting in Bodily Injury to a Pregnant Woman*
    *5 - Felony*
    *35-42-2-1(c)(1)*
    *Penalty: 35-42-2-1(g)(3)*

Disposition: Pending
Offense Date: 12/06/2017

*Count: 3 - Domestic Battery*
    *6 - Felony*
    *35-42-2-1.3(a)(1)*
    *Penalty: 35-42-2-1.3(b)(2)*

Disposition: Pending
Offense Date: 12/06/2017

*Count: 4 - Domestic Battery*
    *A - Misdemeanor*
    *35-42-2-1.3(a)(1)*

Disposition: Pending
Offense Date: 12/06/2017

*Count: 5 - Criminal Mischief*
    *B - Misdemeanor*
    *35-43-1-2(a)*

Disposition: Pending
Offense Date: 12/06/2017